IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM SAUNDERS, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:18-CV-1746 |
| v. | § § | |
| LINCOLN MANUFACTURING, INC., | § § § | JURY DEMANDED |
| Defendant. | § | |

### DEFENDANT'S OBJECTIONS TO AND MOTION TO STRIKE PLAINTIFF'S SUMMARY JUDGMENT EVIDENCE AND DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Lincoln Manufacturing, Inc. ("LMI" or "Defendant") files these Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence [Doc. No. 17] and Reply in Support of its Motion for Summary Judgment [Doc. No. 16]. On February 8, 2019, LMI filed its Motion for Summary Judgment ("Motion"). [Doc. No. 16]. Plaintiff William Saunders ("Plaintiff") filed his Response on March 1, 2019 [Doc. No. 17]. The Response provides no coherent, probative or admissible evidence in support of his claims, and what little "evidence" Plaintiff managed to coble together does not save, and largely contradicts, his prior testimony. Summary judgment is therefore warranted.

### I.
### OBJECTIONS TO AND MOTION TO STRIKE DEFENDANT'S SUMMARY JUDGMENT EVIDENCE

In an effort to bolster his Response, Plaintiff attached two declarations of former LMI employees, both replete with conclusory assertions and speculation. [*See* Doc. No. 17-1 and 17-

2]. For the reasons set forth below, LMI respectfully requests that the Court strike Plaintiff's inadmissible evidence prior to ruling on LMI's Motion for Summary Judgment.

To defeat a properly supported motion for summary judgment, Plaintiff must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). It is well-settled in the Fifth Circuit that a plaintiff cannot manufacture evidence in "affidavit" form so as to create issues of material fact. Such "sham" affidavits are entitled to no weight and are, therefore, insufficient to defeat summary judgment. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) ("[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment[ ]") (internal citations omitted); *see also Canatxx Gas Storage Ltd. v. Silverhawk Capital Partners, LLC*, No. H-06-1330, 2008 U.S. Dist. LEXIS 37803, at *41, n.1 (S.D. Tex. May 8, 2008) (noting that when deposition testimony is inconsistent with affidavit testimony, "the court must view that affidavit with profound skepticism . . . Indeed, it is within the court's discretion to disregard the affidavit altogether should the court determine that it is dealing with a 'sham affidavit'").

A.   **Jose Corona's Declaration Contains Improper Summary Judgment Evidence.**

LMI objects to certain portions of Paragraphs 2 and 3 of Jose Corona's declaration as speculative, conclusory, and contradicted by the evidence in this case.

First, Defendant objects to and moves to strike the following conclusory and unsubstantiated statement in Paragraph 2 of Corona's declaration: "If you got a certain number of points you got a writeup. Mr. Saunders signed off on these forms but that was about all the 'discipline' or 'management' type work that I ever saw him do." [*See* Doc. 17-1 at ¶ 2]. Second,

2

LMI further objects to and moves to strike Corona's statement in Paragraph 2 of his declaration that "[m]y understanding of hiring and firing at the company was that these decisions were made in HR." *Id*. Corona – a former CNC operator at LMI – fails to establish any personal knowledge of, or foundation for, his "understanding" that hiring and firing decisions were made by HR. Indeed, Corona's declaration does not demonstrate that he has first-hand knowledge of LMI's personnel practices, nor does he claim to have any experience working in LMI's Human Resources department or in management. As such, Corona's alleged "understanding" of LMI's hiring and firing practices is not an admissible, factual assertion; it is mere speculation that should be struck. *See EEOC v. Air Liquide USA LLC*, 692 F. Supp. 2d 658, 667 (S.D. Tex. 2010) (striking a portion of the affidavit because the affiant failed to establish that he had personal knowledge of the contents).

B.     **Lorenzo Henderson's Declaration Contains Improper Summary Judgment Evidence.**

Similar to Corona's declaration, LMI objects to certain portions of paragraphs 2 and 4 of Henderson's declaration as speculative, conclusory and contradicted by the evidence in this case. First, LMI objects to and moves to strike Henderson's statement that "Mr. Saunders did not have a say in that"—referring to hiring, firing and interviewing employees. [*See* Doc. 17-2 at ¶ 2]. Although Henderson asserts that he never saw Plaintiff hire, fire or interview another employee, Henderson's declaration does not provide any factual basis or foundation to support his conclusory assertion that Plaintiff "did not have a say" in these decisions. In other words, the mere fact that Henderson did *see* Plaintiff issuing discipline or firing employees is not probative of, nor does it have any bearing on, whether Plaintiff had the authority to carry out these actions. Such an assertion is clearly speculative and should be disregarded.

LMI also objects to and moves to strike the following statement asserted in paragraph 4: "Most if not just about all of his time on the job was spent doing this kind of hard, physical work." Again, Henderson has no personal knowledge to support this conclusion. Indeed, Henderson asserts only that he saw Plaintiff load hoppers, clean up shavings and saw blades. [*See* Doc. 17-2 at ₱ 4]. Henderson's declaration does not indicate or even suggest that Henderson followed Plaintiff around each day at work, monitored Plaintiff's activities or otherwise tracked his movements. Thus, Henderson's assertion that "most if not just about all" of Plaintiff's time was spent performing "this kind of hard, physical work" is nothing more than a guess or estimation that should be stricken.

Further, to the extent Henderson's statements contradict Plaintiff's prior deposition testimony, such statements should be disregarded. *See, e.g., S.W.S. Erectors Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir.1996); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n. 23 (5th Cir.1992); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223 (5th Cir. 1984) (rejecting sworn statement of affiant when it contradicted affiant's earlier deposition testimony). On these bases, the Court should strike the aforementioned statements from Henderson's declaration as inadmissible.

## II.
## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

As fully outlined in Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Section I above), most of the "evidence" on which Plaintiff relies in his Response to Defendant's Motion for Summary Judgment ("Response") should be stricken by the Court. Nevertheless, even if the Court admits Corona and Henderson's declarations in their entirety, Plaintiff has still failed to set forth facts or evidence sufficient to create a genuine issue of material fact as to whether he was an exempt executive employee.

4

Plaintiff's brief Response attempts to avoid summary judgment by manufacturing fact issues where none exist. But there are two glaring problems with Plaintiff's Response. First, Plaintiff largely ignores, and, sometimes entirely contradicts, his own deposition admissions, which, standing alone, demonstrate that Plaintiff's primary duty was management. Second, Plaintiff has not set forth competent summary judgment evidence sufficient to create a genuine issue of material fact and preclude summary judgment. Plaintiff's Response only highlights the fact that he cannot controvert Defendant's properly supported factual and legal analysis establishing that Plaintiff is a bona fide executive employee and is, therefore, exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA").

**A.     Plaintiff Failed to Raise Any Genuine Issues of Material Fact that Preclude Summary Judgment.**

In its summary judgment motion, LMI presented ample evidence to support each of the executive exemption factors. Plaintiff, on the other hand, has failed to present evidence to the contrary that raises a genuine issue of material fact regarding the applicability of the executive exemption. Plaintiff's three-page Response relies almost exclusively on the conclusory and speculative declarations of Corona and Henderson and wholly fails to meaningfully respond to or refute Defendant's arguments or evidence. The Court should disregard Plaintiff's "evidence" and grant summary judgment in favor of LMI.

**1.      The Declarations Plaintiff Uses to Support His Response Contradict His Prior Admissions.**

In his Response, Plaintiff attempts to recast the nature and extent of his managerial duties during his tenure at LMI, by urging the Court to view his job duties through the eyes of two former (subordinate) LMI employees. However, the Court should disregard the testimony of both declarants because it patently contradicts Plaintiff's prior sworn deposition testimony.

Furthermore, Plaintiff certainly has superior knowledge of the job duties he performed while employed at LMI, including the time and effort he expended "manag[ing] the floor, mak[ing] sure the employees were working safe, [and] oversee[ing] things." Ex. D, p. 46:4-10. Thus, his suggestion that Corona and Henderson are the only individuals with "personal knowledge of actual facts relevant to this case" and that their speculative assertions should carry more weight than Plaintiff's own admissions is absurd.

In any event, the Fifth Circuit has repeatedly held that it "does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc,*, 72 F.3d 489, 495 (5th Cir. 1996). The United States Supreme Court has also weighed in on the issue, recognizing that federal courts "have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting . . . [his] own previous sworn testimony (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *See also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999).

Here, Plaintiff makes no attempt to explain the contradictions between his sworn deposition testimony and Corona and Henderson's respective declarations, nor does he make any effort to resolve the disparities. Instead, Plaintiff's Response simply declares that had no managerial responsibilities during his time a Production Supervisor. [*See* Doc. 17 at ⁋ 4]. Incredibly, yet unsurprisingly, as "proof" of this contention, the Response points not to Plaintiff's own testimony, but instead cites to the second-hand testimony of Corona and Henderson. *See id.* The incongruities between Plaintiff's sworn deposition testimony and the later-drafted declarations of Corona and Henderson are stark and numerous. Corona's declaration states that "[m]ost if not just about all of

6

Plaintiff's time was spent doing this kind of hard, physical work." But Plaintiff made multiple contradictory admissions during his deposition that demonstrate the opposite is true. For example, Plaintiff testified:

- He spent "probably 85 to 90 percent of [his] day walking around making sure everything was running properly.[1] Def.'s Ex. D, p. 88:17-24.

- He was responsible for making sure production employees were doing their assigned tasks and weren't "goofing off." *Id.* at pp. 87:19-88:4.

- He spent time correcting his employees whenever he observed them making mistakes with the machines. *Id.* at pp. 88:25-89:5; 90:2-11.

- When an employee came to him with a complaint, he would assess the situation, find out what the problem was and speak with the employee. If the complaint was significant enough, Plaintiff would escalate the complaint to his supervisor. *Id.* at p. 89:15-20.

- Once a new forklift driver was hired for the second shift, Plaintiff stopped driving the forklift and went back to spending more time on the floor monitoring employees in order to help improve their productivity and make sure the employees were doing what they needed to be doing. *Id.* at p. 100:10-20.

Similarly, Corona states in his declaration that he never saw Plaintiff engage in hiring, firing, disciplining or other "management type work." Yet, Plaintiff admitted during his deposition that he had done each of these things. For example, Plaintiff:

- Exercised his authority to discipline employees when he "wrote [a] guy up for being on his phone *Id.* at p. 83:4-84:9, and sent an employee home for fighting *Id.* at pp. 65:19-66:12; Def.'s Ex. E;

- Had the authority to, and did, recommend employees for termination Def.'s Ex. D, pp. 75:25-76:19;

- Independently resolved employee complaints or conflicts *Id.* at pp. 65:19-66:12; Def.'s Ex. E;

- Approved and denied vacation and time-off requests Def.'s Ex. D, pp. 71:21-72:9;

---

[1] This admission was made by Plaintiff during his deposition in response to the following question: "How much time would you say you spent making sure the guys were doing -- the guy -- men and women were doing their jobs?" [Def.'s Ex. D, p. 88:17-19].

7

- Recommended changes to and approved timecards *Id*. at p. 72:8-73:1; and

- Approved and denied shift change requests *Id*. at p. 74:2-11.

In the face of all of these, frankly, damaging admissions, Plaintiff's *only* rebuttal is that he was not an exempt executive employee because two hourly employees who worked underneath him—for some unspecified length of time—said so. Unsurprisingly, Plaintiff does not (and cannot) point to his own testimony, or any other competent summary judgment testimony to support his assertion that the executive exemption does not apply; instead, he is relegated to relying solely on the baseless (and clearly unfounded) assertions of Corona and Henderson.

Plaintiff has not offered competent summary judgment evidence to create a genuine issue of fact and the contradictions and inconsistencies between his testimony and that or Corona and Henderson are not sufficient to preclude summary judgment as to his claims.

**B.**   **LMI is Entitled to Summary Judgment as a Matter of Law.**

Plaintiff acknowledged during his deposition that he was paid an annual salary of $60,000 and he does not refute in his Response that he was paid on a salary basis.[2] Plaintiff also concedes that he customarily and regularly directed the work of more than two employees. Def.'s Ex. D, p. 46:11-18. Thus the only remaining issues—with respect to whether Plaintiff qualified as an exempt executive are—(1) whether Plaintiff's primary duty was management; and (2) whether Plaintiff's suggestions as to hiring, firing, advancement, promotion or other changes of status were given particular weight. Plaintiff's attempts to create questions of fact on these two issues fail.

---

[2] Mabel Olivas, Human Resource Manager at Lincoln Manufacturing, testified that Plaintiff was paid on a weekly basis and was entitled to his salary regardless of the number of hours he worked in a workweek. Ex. A at ¶ 8. Plaintiff does not dispute this in his Response. [*See* Doc. 17].

**1.     Based on Plaintiff's admissions, his primary duty was, unquestionably, management.**

Plaintiff attempts to side-step his numerous admissions by asserting that: (1) he spent most of his time driving a forklift, loading hoppers and operating machinery; and (2) "he did not have a say in hiring, firing, discipline, or such other managerial responsibilities with respect to other employees." [*See* Doc. 17 at ¶ 4]. But both of these "arguments" are meritless.

**a.     Plaintiff was exempt even if he performed many of the same tasks as his subordinate employees.**

In his Response, Plaintiff contends that he spent most his time performing non-supervisory tasks. Of course, this assertion is contradicted by Plaintiff's prior sworn admissions, but even if this claim were true, it does not render Plaintiff's *primary* tasks and duties any less managerial. Indeed, there is no mandate that an exempt employee must exclusively perform non-exempt tasks or that he must perform exempt tasks at least 50% of the time. In fact, "the regulations caution that, while the amount of time spent performing exempt work is a useful guide in determining an employee's primary duty, time alone is not the sole factor and 'nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.'" *Ntuk v. Taylor Smith Consulting, LLC*, No. H-16-1165, 2018 U.S. Dist. LEXIS 46797, at *23 (S.D. Tex. 2018) (citing 29 C.F.R. § 541.700(b)). Moreover, "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." *Id*.

The relevant inquiry here is not the percentage of time Plaintiff spent on managerial versus non-managerial tasks. The most relevant question is this: what was the principal, main, major or most important duty that the Plaintiff performed? *See* 29 C.F.R. § 541.700(a). All of the competent summary judgment evidence in this case, including Plaintiff's own testimony, indicates that

Plaintiff's *primary* duty was, irrefutably, management. *See* Def.'s Ex. D, pp. 46:4-10; 87:19-88:4; 88:17-24; 99:11-16; 100:14-101:1. In the words of Plaintiff: "I wasn't there to let [the employees] do whatever they wanted to do…I was there [to] supervise." *Id*. at p. 84:6-9.

### 2. Plaintiff had sufficient authority to hire, fire, promote or discipline subordinate employees.

The regulations define an exempt executive as one who has the authority to hire **or** fire other employees **or** whose suggestions and recommendations as to the hiring, firing, advancement, promotion **or** any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a) (emphasis added). Thus, evidence that Plaintiff was responsible for or involved in any of these activities confirms that he satisfies the executive exemption.

During his deposition, Plaintiff unequivocally admitted that he: (1) "wrote this guy up for being on his phone"[3]; (2) sent another employee home after the employee engaged in a physical altercation at work[4]; (3) terminated another employee for failing to report to work;[5] and (4) signed off on shift change requests.[6] The fact that Plaintiff now contends, in his Response, that he had "no say" in firing, disciplining or any other change of status of other employees is not only insufficient to preclude summary judgment, it is, in one word: disingenuous.

### III.
### CONCLUSION

Notwithstanding Plaintiff's misstatements of the record, improper reliance on sham declarations, and flawed arguments, the foregoing confirms that there are no genuine issues of material fact that Plaintiff was properly classified as an exempt executive and that LMI is entitled to summary judgment as a matter of law.

---

[3] *See* Def,'s Ex. D, pp. 83:4-84:9.
[4] *See* Def.'s Ex. D, pp. 65:19-66:12; Def.'s Ex. E – Email Report Regarding Workplace Altercation.
[5] *See* Def.'s Ex. D, pp. 77:14-78:8.
[6] *See* Def.'s Ex. D, pp. 73:24:74.

For the foregoing reasons, LMI respectfully requests that the Court (1) strike the above-referenced exhibits to Plaintiff's Response; and (2) grant LMI's Motion for Summary Judgment, order that Plaintiff take nothing, and that LMI be awarded such other and further relief to which it is justly entitled.

Dated: March 8, 2019

Respectfully submitted,

*/s/ Kelley Edwards*
Kelley Edwards (Attorney-in-Charge)
State Bar No. 24041775
Federal I.D. No. 560755
kedwards@littler.com
**LITTLER MENDELSON**
**A PROFESSIONAL CORPORATION**
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

**ATTORNEYS FOR DEFENDANT**
**LINCOLN MANUFACTURING, INC.**

*Of Counsel:*

Leila C. Clewis
State Bar No. 24077579
Federal I.D. No. 1872165
lclewis@littler.com
**LITTLER MENDELSON**
**A PROFESSIONAL CORPORATION**
1301 McKinney Street
Suite 1900
Houston, TX  77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2019, a true and correct copy of the above and foregoing instrument was served on the following via the Court's electronic filing system, as follows:

Josef F. Buenker
THE BUENKER LAW FIRM
2060 North Loop West, Suite 215
Houston, Texas 77018
jbuenker@buenkerlaw.com
**ATTORNEYS FOR PLAINTIFF**

*/s/ Leila C. Clewis*
Leila C. Clewis

FIRMWIDE:162919300.2 076333.1007